UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY R. B.[1],

                Plaintiff,                      Civil Action No. 23-10988

v.                                         Linda V. Parker
                                         United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,                       David R. Grand
                                         United States Magistrate Judge

                Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 13)

Plaintiff Gary R. B. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 11, 13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is not supported by substantial evidence. Thus, the Court **RECOMMENDS** that the Commissioner's Motion

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

for Summary Judgment **(ECF No. 13)** be **DENIED**, Plaintiff's Motion for Summary Judgment **(ECF No. 11)** be **GRANTED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II.    REPORT

### A.    Background

Plaintiff was 37 years old at the time of his alleged onset date of April 1, 2018, and at 5'9" tall weighed between 285 and 315 pounds during the relevant time period. (PageID.225, 229, 685).[2]  He completed eighth grade (in special education classes) before dropping out of school.  (PageID.60, 230, 294).  He most recently worked at Kroger in various positions, including as a courtesy clerk, night cleaner, and fuel clerk.  (PageID.61-63).  However, he stopped working in approximately April 2018 after he had a "massive anxiety attack at work," was taken to the hospital, and was subsequently fired when he was unable to return to work in a sufficiently productive capacity.  (PageID.61, 65, 294).  Plaintiff now alleges disability primarily as a result of depression, anxiety, panic attacks, post-traumatic stress disorder ("PTSD"), borderline personality disorder, back pain, diabetes, hypertension, and carpal tunnel syndrome.  (PageID.229).

After Plaintiff's application for SSI[3] was denied at the initial level on June 23, 2021

---

[2] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 6-1.

[3] Plaintiff filed a previous application for SSI.  On June 13, 2013, ALJ Gregory Holiday issued a decision denying this claim.  (PageID.90-101).

(PageID.132-35), and on reconsideration on December 23, 2021 (PageID.137-38), he timely requested an administrative hearing, which was held on May 19, 2022, before ALJ Lauren Burstein (PageID.52-86). Plaintiff, who was represented by attorney Angela Healey, testified at the hearing, as did vocational expert ("VE") Zachary Matthews. (*Id.*). On June 2, 2022, the ALJ issued a written decision finding that Plaintiff is not disabled under the Act. (PageID.33-46). On March 20, 2023, the Appeals Council denied review. (PageID.19-23). Plaintiff timely filed for judicial review of the final decision on April 27, 2023. (ECF No. 1).

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the

3

impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not disabled under the Act.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 1, 2018 (the alleged onset date).  (PageID.36).  At Step Two, the ALJ found that he has the severe impairments of anxiety, depression, borderline personality disorder, PTSD, mild degenerative changes in the lumbar spine, hypertension, and obesity.  (*Id.*).  At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (PageID.37).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: can

occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally stoop; can understand, remember, and apply simple instructions; can concentrate, persist, and remain on pace while doing simple, routine tasks; cannot perform jobs with tandem tasks; must have a job with little to no change in the work setting or routine; can make only simply work-related decisions; can have no contact with the public; can have only occasional interaction with coworkers; and his job should not require assembly line work or work within hourly quotas, although he can complete end-of-day quotas.  (PageID.40).

At Step Four, the ALJ found that Plaintiff is not able to perform any of his past relevant work.  (PageID.44).  At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Plaintiff is capable of performing the jobs of sorter (94,000 jobs nationally), order filler (150,000 jobs), and packer (20,000 jobs).  (PageID.46).  As a result, the ALJ concluded that Plaintiff is not disabled under the Act.  (*Id.*).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art ...."  *Biestek v. Berryhill*, 139 S. Ct. 1148,

1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.      Analysis

In his motion for summary judgment, Plaintiff argues that the ALJ erred in evaluating the medical opinions of Sarah Machowicz,[4] M.D., his treating psychiatrist. (ECF No. 11, PageID.847-52).  For the reasons set forth below, the Court agrees.[5]

#### 1.      *The Relevant Medical Evidence*[6]

On November 5, 2018, Plaintiff presented to Billy Nordyke, D.O. to establish care. (PageID.310-11).  At a follow-up visit to Dr. Nordyke, on January 28, 2019, Plaintiff indicated he had been having issues with anxiety and insomnia; he was prescribed Vistaril and trazodone.  (PageID.314-16).  At his next visit to Dr. Nordyke, on May 14, 2019, Plaintiff reported that his anxiety had been "out of control"; he was referred to psychiatry.[7] (PageID.317-19).

---

[4] Although Plaintiff refers to this doctor by the last name "Machulez," and the ALJ uses the last name "Maihaliz," the doctor's last name is actually spelled "Machowicz."  (PageID.401).

[5] Plaintiff also argues that the ALJ erred in evaluating the opinion of his treating physician, Billy Nordyke, D.O.; in evaluating his subjective symptoms; and in improperly relying on the VE's testimony.  (ECF No. 11, PageID.847-56).  Because the Court is remanding on other grounds, it need not address the merits of these arguments in detail.  On remand, however, the ALJ should ensure that full and fair consideration is given to each of these issues.

[6] Because the Court finds that the ALJ erred in evaluating the opinions of Plaintiff's psychiatrist, it will focus on medical evidence pertaining to Plaintiff's mental impairments.

[7] Plaintiff underwent a psychological consultative examination on October 17, 2020, with Hugh Bray, Ph.D.  (PageID.303-09).  As a result of that evaluation, Dr. Bray assessed a mild to moderate impairment in Plaintiff's ability to relate to others, including coworkers and supervisors. (PageID.308).  Dr. Bray further assessed a mild to moderate impairment in Plaintiff's ability to understand, remember, and carry out tasks.  (*Id.*).  During the evaluation, Plaintiff could perform simple, repetitive tasks, but Dr. Bray found that his ability to perform multiple step tasks was likely to be mildly to moderately limited.  (*Id.*).  Dr. Bray also assessed a mild to moderate impairment in Plaintiff's ability to maintain attention, concentration, persistence, pace, and effort, as well as a moderate impairment in Plaintiff's ability to withstand the stress and pressure associated with day-to-day part-time or full-time work activities.  (*Id.*).

On December 21, 2020, Plaintiff saw Dr. Machowicz for a psychiatric evaluation. (PageID.428-33).  He indicated that he had been receiving psychiatric services on-and-off for years and wanted to get back into treatment.  (PageID.428).   Apparently, he tried enrolling in mental health services during the beginning of 2020, but he found things too difficult during the pandemic.  (PageID.776).   He described symptoms of depression, anxiety, and panic attacks and admitted to past suicidal thoughts and "anger problems throughout his life." (*Id.*).  Dr. Machowicz diagnosed him with major depressive disorder, generalized anxiety disorder, PTSD, and borderline personality disorder.  (PageID.430). She noted that he had "trouble regulating depression and mood" and "when angry can be unpredictable and violent and unremorseful."  (PageID.432).   Dr. Machowicz suggested lithium for mood stability and indicated a need to rule out bipolar disorder.  (PageID.433).

At subsequent medication reviews in January and February 2021, Dr. Machowicz noted that Plaintiff's mood was "still up and down" with anger issues, anxiety, and panic attacks; he was switched to Abilify, as he found the lithium pills too large to swallow. (PageID.396-401, 412-17).  Plaintiff expressed an interest in dialectical behavior therapy ("DBT"), indicating he wanted to learn the skills necessary for emotional regulation. (PageID.396).   At a March 2, 2021 medication review with Dr. Machowicz, Plaintiff indicated he had had some "dark thoughts" a few weeks earlier but had no current intent or plan to harm himself.  (PageID.379).  He admitted to struggling with personal hygiene – often not having the motivation to shower or brush his teeth.  (*Id.*).  He also admitted avoiding certain things, such as going near water, for fear he would have a panic attack, feel trapped, or that people would look at him.  (*Id.*).   Dr. Machowicz continued his

medications and noted his plan to enter a DBT program.[8]  (PageID.385).  At his next medication review on June 11, 2021, Plaintiff told Dr. Machowicz that he was working on anxiety and mood regulation with his therapist, but he was still battling agoraphobia and worrying that people were watching or scrutinizing him.  (PageID.593).  Dr. Machowicz continued Plaintiff's medications, noting that he "does better with closer (monthly if possible) followup."  (PageID.597).

On June 1, 2021, Dr. Machowicz completed a Mental Disorders Questionnaire regarding Plaintiff's mental condition.  (PageID.475-79).  Dr. Machowicz opined that Plaintiff suffers from anxiety-related disorders and personality disorders, noting that he has "borderline personality disorder which can devolve into psychotic symptoms during periods of stress."  (PageID.475).  She assessed a marked limitation in his ability to maintain social functioning, noting that he suffers from decreased stress tolerance affecting his social interaction skills.  (PageID.476).  Similarly, Dr. Machowicz opined that Plaintiff has marked difficulties in maintaining concentration, persistence, or pace, with a tangential, perseverative presentation.  (*Id.*).  Specifically, Dr. Machowicz assessed moderate limitations in Plaintiff's ability to remember locations and work-like procedures; understand and remember very short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; and ask simple questions or request assistance.  (PageID.479).  Dr. Machowicz further assessed marked limitations

---

[8] Subsequent records indicate that, on March 31, 2021, Plaintiff underwent a DBT assessment and began therapy in an attempt to combat his ongoing anxiety, agoraphobia, panic attacks, and intense and explosive anger.  (PageID.349-57).  This therapy continued at least through March of 2022.

in Plaintiff's ability to understand and remember detailed instructions; carry out very short and simple instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities with a schedule, maintain regular attendance, and be punctual within customary tolerance; work in coordination with or proximity to others without being distracted by them; complete a normal workday/workweek without interruptions from psychologically based symptoms and perform at a consistent pace; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.  (*Id.*).

That same day, Dr. Machowicz also completed a Medical Source Statement. (PageID.480-83).  Dr. Machowicz reported treating Plaintiff since December 2020 for major depressive disorder, borderline personality disorder, generalized anxiety disorder, and PTSD with a variety of psychotherapies and medications.  (PageID.480).  In terms of clinical findings, Dr. Machowicz noted that Plaintiff exhibits "markedly high anxiety during times of minimal duress" and is perseverative and tangential, with low moods, emotional lability, and irritability.  (*Id.*). She reported that he suffers from decreased energy, feelings of guilt or worthlessness, generalized persistent anxiety, mood disturbances, difficulty thinking or concentrating, recurrent and intrusive recollection of a

traumatic experience, psychological dependence, passivity or aggressivity, persistent disturbances of mood or affect, apprehensive expectation, emotional withdrawal or isolation, intense and unstable interpersonal relationships and impulsive and damaging behavior, emotional lability, and easy distractibility. (PageID.481). She opined that Plaintiff would be off task twenty percent of the day due to his symptoms. (*Id.*). Dr. Machowicz further opined that Plaintiff has no useful ability to function in his ability to maintain attention for two-hour segments; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruption from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; and set realistic goals or make plans independently of others. (PageID.482). She found that he would be absent from work more than four days per month and characterized his prognosis as "uncertain." (PageID.480, 483).[9]

Plaintiff's subsequent medication reviews were with psychiatrists other than Dr. Machowicz. For example, on July 19, 2021, Plaintiff saw Javaid Arrine, M.D., who noted that Plaintiff's energy level was poor; his concentration was worse; he feels suspicious all

---

[9] During this same general time frame, Plaintiff's primary care physician, Dr. Nordyke, completed a Medical Source Statement, which focused primarily on Plaintiff's physical impairments. (PageID.471-74). In his opinion, however, Dr. Nordyke noted that Plaintiff suffers from anxiety, is likely to be off task 25% or more of a day, is incapable of even low stress jobs (because of difficulties with "personal interaction"), and would miss work about three days per month. (*Id.*).

the time; and his anxiety fluctuates.  (PageID.562).  Plaintiff also admitted to getting angry and hitting walls.  (*Id.*).  On mental status examination, Plaintiff's mood was sad, with limited insight and judgment, and he exhibited paranoid delusions.  (PageID.564).  Plaintiff's August 18, 2021 medication review was with Sally Szymanski, D.O.; he reported ongoing anxiety, nightmares about drowning, and anger episodes.  (PageID.532).  In September 2021, Plaintiff was easily irritable and anxious, and Dr. Szymanski noted that he seemed "obsessive and ruminative" about some past events.  (PageID.506).  She noted that his affect was blunted and added Zoloft for depression and anxiety.  (*Id.*).  On November 3, 2021, Plaintiff reported that he was still staying in his room a lot.  (PageID.810).  Between that time and February 2022, Plaintiff continued with DBT, worked on managing his anger, and stayed on a fairly consistent medication regimen.

2.   *The ALJ's Evaluation of Dr. Machowicz's Medical Opinions is Not Supported by Substantial Evidence*

In his motion, Plaintiff argues that the ALJ erred in evaluating Dr. Machowicz's June 2021 medical opinions.  (ECF No. 11, PageID.847-52).  The regulatory criteria for weighing medical opinions with respect to claims, like Plaintiff's, filed on or after March 27, 2017, are set forth at 20 C.F.R. § 416.920c.  Specifically, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ...."  20 C.F.R. § 416.920c(a).  Rather, ALJs must "articulate how [they] considered the medical opinions ... using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."  20 C.F.R. § 416.920c(b)(1).  These factors include:

> (1)   Supportability.   The more relevant the objective medical evidence and supporting explanations presented by a medical source

12

are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2)   Consistency.   The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

(3)   Relationship with the claimant.   This factor combines consideration of the issues in paragraphs (c)(3)(i)-(v) of this section … [which include length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship].

(4)   Specialization.   The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5)   Other factors.   We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding.

20 C.F.R. § 416.920c(c).  The most important factors in this analysis are a medical opinion's supportability and consistency with other evidence in the record.  *See* 20 C.F.R. § 404.1520c(b)(2).   "Supportability" refers to the relevance of the objective medical evidence and supporting explanations presented by a medical source to support his or her opinion.  *See* 20 C.F.R. § 404.1520c(c)(1).   "Consistency" refers to how consistent a medical opinion is with the evidence from other medical and non-medical sources.  *See* 20 C.F.R. § 416.920c(c)(2).   ALJs are required to explain how they considered the supportability and consistency factors for a medical source's medical opinions in the determination or decision.  *See* 20 C.F.R. § 416.920c(b)(2).

As set forth above, on June 1, 2021, Dr. Machowicz issued two medical opinions, in which she reported treating Plaintiff since December 2020 for major depressive disorder, borderline personality disorder, generalized anxiety disorder, and PTSD. (PageID.475-83). In terms of clinical findings, Dr. Machowicz noted that Plaintiff exhibits "markedly high anxiety during times of minimal duress" and is perseverative and tangential, with low moods, emotional lability, and irritability. (*Id.*). She reported that he suffers from decreased energy, feelings of guilt or worthlessness, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, recurrent and intrusive recollection of a traumatic experience, psychological dependence, passivity or aggressivity, persistent disturbances of mood or affect, apprehensive expectation, emotional withdrawal or isolation, intense and unstable interpersonal relationships and impulsive and damaging behavior, emotional lability, and easy distractibility. (*Id.*).

Dr. Machowicz assessed marked limitations in Plaintiff's ability to maintain social functioning and concentration, persistence, or pace, opining that he would be off task twenty percent of the day due to severe symptoms. (*Id.*). Dr. Machowicz further opined that Plaintiff has no useful ability to function in his ability to maintain attention for two-hour segments; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruption from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal

14

work stress; and set realistic goals or make plans independently of others.  (*Id.*).  She found

that he would be absent from work more than four days per month and characterized his

prognosis as "uncertain."  (PageID.480, 483).

The ALJ expressly considered Dr. Machowicz's opinion, stating as follows:

> Dr. Sarah Maihaliz [sic] opined the claimant would be off task 20%
> of the workday, and that the claimant was at least seriously limited if
> not more in all areas of mental functioning as well as moderately to
> markedly limited in all areas of mental functioning.  The undersigned
> finds this unpersuasive.  The assessment is not consistent with the
> medical evidence of record.  [] Recent mental health treatment records
> indicate the claimant is making improvement, and Dr. Maihaliz [sic]
> does not provide an explanation for such extreme limitations.
> Furthermore, there is no medical evidence of record that shows this
> doctor actually examined the claimant or took part in his treatment.

(PageID.43-44) (internal citations omitted).   Viewing the ALJ's evaluation of Dr.

Machowicz's opinion in light of the applicable regulations, it is clear that she erred in

considering several of the factors set forth in 20 C.F.R. § 416.920c(c).

With respect to the supportability factor, the ALJ noted that Dr. Machowicz "does

not provide an explanation for such extreme limitations."[10]  (PageID.44).  The Court

---

[10] The ALJ also discounted Dr. Machowicz's opinion because she found "no medical evidence of
record that shows this doctor actually examined the claimant or took part in his treatment."
(PageID.44).  This is simply incorrect.  To the contrary, the medical evidence demonstrates that
Dr. Machowicz was Plaintiff's treating psychiatrist.  Indeed, Dr. Machowicz saw Plaintiff – albeit
via Zoom, during the COVID-19 pandemic – no fewer than five times between December 2020
and June 2021.  (PageID.378-86, 396-401, 412-17, 428-33, 593-98).  At Plaintiff's initial visit with
Dr. Machowicz, she conducted a full psychiatric evaluation, noting his symptoms (depression,
anxiety, panic attacks); diagnosing him with major depressive disorder, generalized anxiety
disorder, PTSD, and borderline personality disorder; prescribing lithium for mood stability; and
indicating a need to rule out bipolar disorder.  (PageID.428-33).  At subsequent medication
reviews, Dr. Machowicz noted Plaintiff's ongoing symptoms, adjusted his medications, and
referred him for DBT.  (PageID.378-86, 396-401, 412-17, 593-98).  Clearly, then, Dr. Machowicz
was in fact Plaintiff's treating psychiatrist; she examined him on several occasions; and she was a

disagrees.   When opining as to Plaintiff's marked limitations in maintaining social functioning and concentration, persistence, or pace, Dr. Machowicz specifically pointed to: (1) Plaintiff's diagnoses (borderline personality disorder, major depressive disorder, generalized anxiety disorder, and PTSD); (2) clinical findings supporting her opinion ("markedly high anxiety during times of minimal duress, perseverative, tangential; low moods; emotional lability; irritability"); (3) his medications; (4) various treatments being provided (individual therapy, medication, and DBT); and (5) specific examples of his difficulties in these areas (decreased stress tolerance affecting social interaction skills, tangential, perseverative presentation).  (PageID.475, 476, 480).  Thus, Dr. Machowicz did in fact support her opinions with objective medical evidence – in the form of specific clinical findings, diagnoses, and examples of Plaintiff's difficulties in social functioning and maintaining concentration, persistence, or pace – all of which appear to favor finding this opinion persuasive, not "unpersuasive," as the ALJ found.   *See* 20 C.F.R. § 416.920c(c)(1); *see also Plummer v. Comm'r of Soc. Sec.*, No. 16-13059, 2017 WL 3821751, at *2 (E.D. Mich. Sept. 1, 2017) (in the psychiatric context, objective medical evidence consists of "medically demonstrable phenomena that indicate specific psychological abnormalities, *e.g.,* abnormalities of behavior, mood, thought, memory, orientation, development, or perception.").  Thus, the ALJ's supportability findings are not supported by substantial evidence.

---

specialist in the field of mental health treatment.  All of these factors should have been properly considered when assessing the persuasiveness of Dr. Machowicz's opinion.  *See* 20 C.F.R. § 416.920c(c)(3) and (4).

The ALJ also considered the consistency factor when finding Dr. Machowicz's opinion unpersuasive, deeming her assessment "not consistent with the medical evidence of record" and noting that "[r]ecent mental health treatment records indicate the claimant is making improvement …." (PageID.43). The ALJ did not cite any specific treatment records, however, when making this sweeping generalization. The Commissioner argues that, reading the ALJ's decision as a whole, "the ALJ identified specific evidence elsewhere in her decision, including treatment notes and hearing testimony where Plaintiff reported improvement of his symptoms, consultative examinations showing mostly normal mental examination findings, and self-reported daily living activities that were inconsistent with the extremely restrictive limitations opined by Dr. Machowicz." (ECF No. 13, PageID.875) (citing PageID.41-44). The Court disagrees. While the ALJ did cite to Plaintiff's testimony on one particular day that "therapy was helping" (PageID.41), Plaintiff also repeatedly testified to suffering from continued depression and panic attacks and having "difficulty with comprehension," and he admitted "he can be aggressive and has anger management issues." (*Id.*). Plaintiff's testimony in this regard is consistent with the medical evidence in the record. (*E.g.*, PageID.379, 396, 412, 432, 506, 532, 562, 564, 593, 776). To the extent the Commissioner characterizes Dr. Bray's consultative examination report as "showing mostly normal mental examination findings" (ECF No. 13, PageID.875), that report – as a whole – appears not inconsistent with Dr. Machowicz's opinion and should be fully and properly evaluated on remand. Specifically, the ALJ noted that Plaintiff told Dr. Bray he suffers from depression, anxiety, and panic attacks and indicated that he isolates himself from other people. (PageID.42) (citing PageID.303-08).

17

In addition to other mild to moderate limitations, Dr. Bray specifically found that Plaintiff's ability to withstand the stress and pressure associated with full-time (or even part-time) work activities is moderately impaired and that Plaintiff "needs to be in mental health treatment" and continue prescribed medications.  (PageID.307-08).  Finally, to the extent the ALJ relies on "improvement" in Plaintiff's mood in discounting Dr. Machowicz's opinion as inconsistent with the evidence of record, even her own characterizations of the medical evidence belie the fact that Plaintiff was actually improving, or that any improvement materially detracted from Dr. Machowicz's opinion.  (PageID.42) (citing PageID.776) (in December 2020, Plaintiff "reported seeing an improvement in his mood *but continued to have significant anxiety and depression*"); (PageID.775) (in November 2021, Plaintiff reported improvement in mood but "*still reported issues with anxiety, depression[,] panic attacks, and social anxiety*")) (emphasis added).  For all of these reasons, the Court is unable to conclude that the ALJ's consistency findings are supported by substantial evidence.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is not supported by substantial evidence and that the case should be remanded for further proceedings consistent with this Report and Recommendation.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 13)** be **DENIED**, that Plaintiff's Motion for Summary Judgment **(ECF No. 11)** be **GRANTED**, and that, pursuant to sentence four of

18

42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Dated: August 12, 2024             s/David R. Grand
Ann Arbor, Michigan             DAVID R. GRAND
                                United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 12, 2024.

                            s/Eddrey O. Butts
                            EDDREY O. BUTTS
                            Case Manager